McCORD, Chief Judge.
This is an appeal from an order of the trial court entered in a receivership proceeding brought by appellee against Financial Fire and Casualty Company under Chapter 631, Florida Statutes. The trial court in the order from which the appeal has been taken (a final order as to appellant) ruled that appellant did not have the right to the balance of proceeds resulting from the sale of collateral. We agree and affirm.
In 1972, appellant entered into a construction loan agreement consisting of a note mortgage loan agreement and security agreement with Imperial Crown Arms, Inc., in connection with a construction project of Imperial. In conjunction with that transaction, Financial Fire and Casualty Company issued six performance bonds obligating Financial Fire to fully indemnify Florida National for all costs and damages which it might suffer should the general contractor on the construction project fail to perform. The general contractor subsequently defaulted and Financial Fire, pursuant to its performance bonds, undertook to complete the project. At this point, Financial Fire requested a loan from appellant to finance further construction. Financial Fire proposed to pledge certain bonds and securities as security for payment of notes which it proposed to give appellant in the total amount of $459,000. The bonds and securities were delivered to appellant by Financial Fire on July 5, 1974. Thereafter, on July 12, 1974, Financial Fire forwarded to its attorney the first of four single payment collateral notes dated July 12, 1974, in the amount of $200,000. On July 19, 1974, this collateral note was delivered to appellant. On July 22, 1974, appellant advanced the first monies against that note.
On January 16, 1975, pursuant to an application of appellee (the Department of Insurance of the State of Florida) the trial court entered an order to show cause and temporary injunction against Financial Fire and on January 21, 1975, issued an order appointing a receiver for Financial Fire. On February 21, 1975, an Order of Liquidation was entered. Construction of the project was still incomplete and subsequent to the Order of Liquidation, appellant foreclosed its mortgage. Final judgment of foreclosure was entered and the property *367 sold for less than the amount of the mortgage indebtedness. On the date of the Order of Liquidation, appellant having loaned Financial Fire the total amount of $379,000, was in possession of the unpaid collateral notes in the amounts of $200,000, $154,000, and $25,000 respectively, and was in possession of the bonds and securities it had to secure payment of the collateral notes.
On March 12,1975, the receiver of Financial Fire entered into an agreement with appellant whereby they agreed that appellant would sell the securities and apply the proceeds to pay off the loan ($379,000) and place the balance of the proceeds in escrow in the name of the receiver and appellant. At this point, Financial Fire had satisfied its obligation to appellant for the $379,000 loan, but it had not satisfied its obligation to complete construction of the project under the performance bonds. Appellant considered that the balance of the proceeds from the sale of the securities should be applied to reimburse it for the amount in excess of the proceeds of the foreclosure sale that it had expended as a result of Financial Fire’s failure to perform. The receiver disagreed, and this disagreement forms the basis for the dispute which has resulted in this appeal. The trial court, by the order appealed from, directed appellant to pay over the balance of the proceeds to the receiver.
The collateral notes contain what has come to be known as a “dragnet” clause which states as follows:
“. . .as security for all other liabilities or obligations of each maker (including each maker and any other person) to Bank (primary, secondary, direct, contingent, sole, joint or several) due or to become due, or which may be hereafter contracted or acquired whether such liabilities arise from the ordinary course of business or otherwise.”
Appellants contend that under this “dragnet” clause, the loss it sustained as the result of Financial Fire’s failure to complete the construction of the improvement under its performance bonds is secured by the collateral that was pledged to appellant. Appellee contends that the “drague*’ clause did not encompass Financial Fire’s obligation under the performance bonds and that under § 631.262(1), Florida Statutes (1975) —a part of the insurance code relating to insurer insolvency — the transaction, insofar as it relates to the collateral as security for loss under the performance bonds, is voidable because that obligation, if any, occurred within six months prior to the filing of the petition in the delinquency proceeding brought under Chapter 631. § 631.262(1) provides as follows:
“(1) Every transfer made or suffered and every obligation incurred by an insurer within 1 year prior to the filing of a successful petition in any delinquency proceeding under this chapter, upon a showing by the receiver that the same was incurred without fair consideration, or with actual intent to hinder, delay, or defraud either then existing or future creditors, shall be fraudulent and voidable. However, every such transfer or obligation incurred or suffered within 6 months prior to the filing of the above petition shall be presumed void and fraudulent, with the burden of proof upon the obligee or transferee to show otherwise. This subsection shall not apply to a person who in good faith is a purchaser, lienor, or obligee, for a present fair equivalent value, but any purchaser, lienor, or obligee who in good faith has given a valuable consideration less than fair for such transfer, lien, or obligation may retain the property, lien, or obligation as a security for repayment. The court may, on due notice, order any such transfer or obligation to be preserved for the benefit of the estate, and in that event the receiver shall succeed to and may enforce the rights of the purchaser, lienor, or obligee.”
Appellant does not contest the ruling of the trial court that the obligation of Financial Fire, under its performance bonds, would be an antecedent debt and therefore would not constitute a “present, equivalent value” within the meaning of the above statute and does not contest that if the “transfer” took place after July 16, 1974, the transac *368 tion is voidable (except to the extent of appellant’s advance of new funds against the security of the collateral). The parties agree that the only question insofar as this particular point is concerned is whether or not the “transfer” took place before or after July 16, 1974.
Appellant, in support of its contention that the “transfer” took place prior to July 16, 1974, relies upon Chapter 631, Florida Statutes (1975) — the Insurance Code. Appellant points to § 631.262(2) which states as follows:
“(2) Transfers shall be deemed to have been made or suffered, or obligations incurred, when perfected according to the following criteria:
(a) A transfer of property other than real property shall be deemed to be made or suffered when it becomes so far perfected that no subsequent lien obtainable by legal or equitable proceedings on a simple contract could become superior to the rights of the transferee.” (Emphasis supplied.)
Appellant calls attention to the fact that § 679.303 provides that a security interest is perfected when it has attached and when all of the applicable steps required for perfection have been taken. Appellant further points out that under § 679.204 a security agreement attaches when (1) there is an agreement that it attach, (2) value is given, and (3) the debtor has rights in the collateral. Appellant then points out that under §§ 679.303 and 679.304, once a security interest has attached, the security interest in the collateral is perfected when the secured party takes possession. Appellant contends the trial court erred in ruling that appellant’s security interest in this collateral as security for Financial Fire’s performance under its completion bonds could not attach or be perfected until appellant received possession of the July 12, 1974, collateral note; that such was error because the securities had been delivered into appellant’s possession by Financial Fire and therefore a written agreement was not required in order for the security agreement to attach; that since a written security agreement was not required, possession of such an agreement by appellant was not necessary to the attachment of the security interest. Appellant in addition contends that even if this were not a collateral loan situation and appellant did not obtain possession of the securities, the security agreement would have been enforceable under § 679.203 against Financial Fire as soon as it had been signed rather than at the time appellant obtained possession of it; that the security agreement was signed by Financial Fire at least as of July 12, 1974, which is more than six months from the filing of the petition for receivership. We cannot agree with appellant’s contentions.
The fallacy of appellant’s argument is that under § 679.204 a security interest cannot attach until there is agreement that it attach. Appellant had the securities in its possession but had given no binding or enforceable commitment to Financial Fire as to the amount of money it would lend on the securities and the terms upon which it would make the loan. No agreement existed as of July 5,1974 (the date the securities were delivered to appellant) under which a security interest could have attached. Mr. Ehlis, president of appellant Bank testified in his deposition as follows:
“A. No, they explained to me that they had a big loss in a complex out in Texas, some place, and they were using a lot of ready cash out there; and they had a good number of bonds on deposit in the bank in Fort Lauderdale, in the trust department. And if they transferred those bonds up here, would we lend them money against them?
And I said, ‘Yes, I’d consider that.’ And it didn’t seem illogical to me to lend them the money on good bonds. I asked them to furnish me a list of what bonds they had; and I would tell them how much I’d lend on each specified bond.
And when they furnished me a list, I broke it down into three categories. One: I would call it to the top grade bond; that I was willing to lend as much as ninety percent on it.
Another one that was a more marginal bond; that I think I said I would lend about sixty, seventy percent on.
*369 And the draw, I wouldn’t let him — it was about fifty percent on. A few I wouldn’t take.
Q. So you actually rejected some that they proposed?
A. It seem to me I did, yes.”
There was no agreement between the parties that a security interest attach to the collateral in the hands of appellant until the notes which Financial Fire later delivered to appellant were accepted and appellant had bound itself to lend Financial Fire the amount of money provided for in the notes. The notes and a corporate resolution of Financial Fire which had been requested by appellant were not delivered by Financial Fire’s attorney to appellant until July 19, 1974, and monies were not advanced to Financial Fire on the notes until July 22,1974. Thus, there was no agreement between the parties that the collateral attach until at least July 19, 1974. Compare Kendel v. Pontious, 261 So.2d 167 (Fla.1972).
Having determined that the agreement for the security interest to attach to the collateral did not occur until on or after July 19, 1974, it would not be appropriate for us to rule on the question of whether or not the “dragnet” clause would have been applicable to Financial Fire’s obligation under its performance bond.
Affirmed.
RAWLS and SMITH, JJ., concur.